SEALED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

UNITED STATES and
THE STATE OF FLORIDA,
*ex rel.* [UNDER SEAL],

|  |  |
|---|---|
|  | FILED BY KP D.C. |
|  | JUN 2 9 2023 |
|  | ANGELA E. NOBLE |
|  | CLERK U.S. DIST. CT. |
|  | S. D. OF FLA. · MIAMI |

                                    Plaintiffs,

vs.

[UNDER SEAL],

                                    Defendants.

**FILED *IN CAMERA*
AND UNDER SEAL
PURSUANT TO THE
FALSE CLAIMS ACT,
31 U.S.C. § 3730(b), and
THE FLORIDA FALSE CLAIMS
ACT, FLA. STAT. § 68.083(2)**

## COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729 - 3733, AND THE FLORIDA FALSE CLAIMS ACT, FLA. STAT. §§ 68.081 - 68.092

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

UNITED STATES and
THE STATE OF FLORIDA,
*ex rel.* MARCY L. HOWARD, M.D.,

                              Plaintiffs,

vs.

CENTENE CORPORATION,

SUNSHINE STATE HEALTH PLAN,
INC., in its own capacity and as successor
to

WELLCARE OF FLORIDA, INC. D/B/A
STAYWELL HEALTH PLAN,

                              Defendants.

**FILED *IN CAMERA* AND UNDER
SEAL PURSUANT TO THE
FALSE CLAIMS ACT, 31 U.S.C. §
3730(b), AND THE FLORIDA
FALSE CLAIMS ACT, FLA.
STAT. § 68.083(2)**

**COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729 –
3733, AND THE FLORIDA FALSE CLAIMS ACT, FLA. STAT. §§ 68.081 - 68.092**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    JURISDICTION AND VENUE ............................................................................3

III.   PARTIES ..............................................................................................................3

IV.   LEGAL BACKGROUND .....................................................................................5

     A.    The Federal False Claims Act...................................................................5

     B.    The Florida False Claims Act ...................................................................7

     C.    Federal Healthcare Programs....................................................................7

           1.    Medicaid ........................................................................................8

           2.    Capitated Rates and the Medical Loss Ratio .................................9

V.    FACTUAL ALLEGATIONS ...............................................................................11

     A.    Defendants Falsely Report Lower Capitated Payments, Artificially
           Inflating Their Medical Loss Ratio..........................................................11

VI.   COUNTS ..............................................................................................................16

VII.  PRAYER FOR RELIEF .......................................................................................18

VIII. JURY TRIAL DEMANDED................................................................................18

## I.   __INTRODUCTION__

1.    Plaintiff-Relator Marcy L. Howard, M.D. ("Relator") brings this action on behalf of the
United States of America and the State of Florida against Centene Corporation ("Centene") and
its current and former wholly owned subsidiary, Sunshine State Health Plan, Inc. ("Sunshine") in
its own capacity and as successor to Wellcare of Florida, Inc. (d/b/a Staywell Health Plan, a
Florida corporation until September, 30, 2021 when it merged with Sunshine State Health Plan,
Inc.) ("Staywell") (hereinafter, collectively referred to as "Defendants"), health insurers that
provide Medicaid managed care plans in Florida, to obtain redress on behalf of the United States
and Florida for Defendants' violations of the False Claims Act, 31 U.S.C. §§ 3729-3733, and the
Florida False Claims Act, FLA. ST. §§ 68.081–68.092, resulting from Defendants' knowingly
concealing, avoiding, or decreasing an obligation to pay or transmit money to Florida and the
United States, and knowingly making, using or causing to be made or used a false record or
statement material to an obligation to pay or transmit money to the United States and Florida.

2.    Defendants are required by state and federal regulations to report their Medicaid
managed care plans' Medical Loss Ratio (MLR) each calendar year. The MLR is the percentage
of the plan's annual revenue spent on patient care and other enumerated items. Under Federal
regulations and the Florida Medicaid rules, a Florida Medicaid managed care plan must spend at
least 85% of its annual revenue on patient care and other enumerated items.

3.    Defendants are required by federal law and regulations to report and return to CMS
and/or the State Medicaid program any identified overpayments within 60 days. If the
overpayment is retained and not reported after this deadline, the overpayment is an "obligation"
under the False Claims Act.

4.    Defendants knowingly submit annual audited financial reports to the Florida Agency for

Health Care Administration ("AHCA") that underreport the revenue they receive from AHCA in the form of capitated payments. By reporting lower capitated payments than AHCA actually provides to the plan, Defendants' resultant MLR percentage artificially increases, making it appear that Defendants have met Federal and Florida requirements.

5.    Defendants' annual audited financial reports submitted to AHCA report these false capitated payment totals and MLRs, making it appear that Defendants have met mandatory state and federal Medicaid MLR requirements when in fact the actual MLR is less than the required 85%.

6.    If Defendants had truthfully reported their actual capitated payment totals, and the resultant MLRs that were below state and federal requirements, Defendants would be legally obligated to pay or transmit their excess profits to AHCA. Since over fifty percent of the Medicaid program is funded by the United States, over fifty percent of those excess profits should have been paid or transmitted to the United States.

7.    Accurate MLR reporting is material to the United States and Florida's decision to pay Medicaid managed care plans such as Defendants to provide care to Medicaid beneficiaries. Defendants must certify their MLR accuracy in their annual audited financial statements submitted to AHCA.

8.    By failing to report their retention of excess capitated payments, Defendants knowingly made, used or caused to be made or used a false record or statement material to an obligation to pay or transmit money to the Government. By failing to report their retention of excess capitated payments, and then failing to return these excess funds to the Government, Defendants knowingly concealed, avoided, or decreased an obligation to pay or transmit money to Florida and the United States.

2

9.   As a result of Defendants' actions, the United States and Florida have been damaged.

## II.   **JURISDICTION AND VENUE**

10.   This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and under the FCA, 31 U.S.C. §§ 3732(a) & (b).

11.   The Court may exercise personal jurisdiction over the Defendants because one or more of the Defendants transacts business in this District or engages in the alleged illegal activities and practices in this District.

12.   Venue in this District is appropriate under 31 U.S.C. § 3732(a) and 28 U.S.C. §1391(b)(2) because the Defendants can be found in and/or transact business in this District, and because violations of 31 U.S.C. §§ 3729 - 3733 alleged herein occurred within this District.

## III.   **PARTIES**

13.   The United States of America is the real party in interest to the claims under the False Claims Act in this action. Through the Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS"), the United States administers the Medicaid program.

14.   Florida is the real party in interest to the claims under the Florida False Claims Act in this action. The Florida AHCA administers the Florida Medicaid Program. Florida's FY 2018 Federal Medical Assistance Percentage ("FMAP")[1], the percentage of total Medicaid expenditures paid by the Federal government, was 61.79%; for FY 2019 was 60.87%; for FY 2020 was 67.67%; for FY 2021 was 68.16%, for FY 2022 was 61.03%, and for FY 2023 is 60.05%.

15.   Relator Marcy L. Howard, M.D., is a pediatrician and resident of Crystal River, FL. Dr.

---

[1] The percentage varies by state, based on the state's per capita income.

Howard has been a physician for over thirty years and is board certified in pediatrics. Approximately 85% of Dr. Howard's pediatric patient population consists of Medicaid or CHIP beneficiaries.

16. There has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e). There have been no public disclosures that are substantially the same as this Complaint. Whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Before filing this action, Relator voluntarily disclosed to the Government the information on which the allegations or transactions in this Complaint are based. Additionally, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions relevant to her claims.

17. Centene Corporation is a Delaware corporation formed on September 26, 2001, and registered as a Florida foreign for-profit corporation on July 9, 2019. Centene is a managed care health insurance company, providing and/or administering benefits for over 26 million individuals and families, including under Medicare and Medicaid managed care plans, Tricare, and plans under the Affordable Care Act. Centene claims to be the largest Medicaid managed care organization in the United States, and a leader in Medicaid managed care in California, Florida, New York and Texas. https://www.centene.com/content/dam/centenedotcom/investor_docs/CNC-FactSheet-2022-Q3_508.pdf.

18. Centene is a publicly traded company, and as of December 31, 2022, over 64% of its revenue came from its Medicaid programs.

19. Sunshine State Health Plan, Inc. is a wholly owned subsidiary of Centene, and "among

4

the largest comprehensive healthcare plans in Florida." https://www.centene.com/products-and-services/browse-by-state/florida.html. On or about August 26, 2021, Sunshine, a Florida corporation formed on April 3, 2007, filed Articles of Merger with the Florida Department of State that reported its merger with Wellcare of Florida, Inc. effective September 30, 2021. Both companies subsequently operate under the name Sunshine State Health Plan, Inc. Sunshine provides and administers Medicaid managed care plans in Florida.

20.    Wellcare of Florida Inc., d/b/a Staywell, was a Florida corporation formed as a wholly owned subsidiary of Centene on May 17, 1985. Staywell provided and administered Medicaid managed care plans in Florida up until September 30, 2021.

21.    Centene was the parent corporation of its wholly owned subsidiaries, Sunshine and Staywell. Centene owned 100% of Sunshine and Staywell's common stock, had operational and strategic control over Sunshine and Staywell's day to day operations, and reported Sunshine and Staywell's financial results on Centene's consolidated financial statement. Since September 30, 2021, Sunshine is a wholly owned subsidiary of Centene, and Centene owns and controls Sunshine, and reports Sunshine's financial results on its consolidated financial statement.

## IV.    **LEGAL BACKGROUND**

### A.    **The Federal False Claims Act**

22.    The False Claims Act ("FCA") establishes liability for any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, 31 U.S.C. § 3729(a)(1)(G).

23.    The term "knowingly" under the FCA means that a person, with respect to

information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1). No proof of specific intent to defraud is required to show that a person acted knowingly under the False Claims Act. 31 U.S.C. § 3729(b)(1)(B).

24.   The term "material" is defined by the FCA as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money." 31 U.S.C. § 3729(b)(4). The term has been further defined and applied by courts, including by the United States Supreme Court in *United States ex rel. Escobar v. United Health Services*, 136. S.Ct. 1989 (2016). Therein, the Court defined "material" submissions as actionable claims when they contain "misrepresentations. . . that state the truth only so far as it goes, while omitting critical qualifying information," *Escobar*, 136 S.Ct. at 1994.

25.   Section 3729(a)(1) of the FCA provides that a person is liable to the United States Government for three times the amount of damages that the Government sustains because of the act of that person, plus a civil penalty of $5,000 to $10,000 per violation. Pursuant to the Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (note), 64 Fed. Reg. 47099, 47103 (1999), and 28 C.F.R. § 85.3 (2015), the FCA civil penalties were adjusted to $5,500 to $11,000 per violation for violations occurring on or after October 23, 1996. In accordance with the Federal Civil Penalties Inflation Adjustment Act of 2015, those same FCA civil penalty amounts were made applicable to all violations occurring on or before November 2, 2015. *See* 28 C.F.R. §§ 85.3 & 85.5 (2016); 81 Fed. Reg. 42491, 42500 (2016). In accordance with the Bipartisan Budget Act of 2015, 28 U.S.C. § 2461 (note) (2015), the Department of Justice has annually adjusted the penalties applicable to violations occurring after November 2, 2015 and assessed or enforced after August

1, 2016. As of the filing of this Complaint, the FCA civil penalty amounts have been adjusted for violations occurring after November 2, 2015 and assessed after January 29, 2023 to $13,508 to $27,018 per violation. 28 C.F.R. § 85.5 (2023).

**B.    The Florida False Claims Act**

26.    Florida's false claims statute is modeled after the Federal FCA. Fla. Stat. §§ 68.081-68.092.

27.    The Florida FCA creates liability for those who knowingly make, use or cause to be made or used a false record or statement material to an obligation to pay or transmit money to the state, or knowingly conceals or knowingly or improperly avoids or decreases an obligation to pay or transmit money to the state. Fla. St. § 68.082(2)(g).

28.    The Florida FCA permits civil penalties of not less than $5,500 and not more than $11,000 and treble the amount of the state's damages because of the Defendants' actions. Fla. St. § 68.082(2).

**C.    Federal Healthcare Programs**

29.    Through the Medicare, Medicaid and CHIP programs, the Federal government pays for some or all of the healthcare costs for the elderly, disabled, and certain low-income individuals and families, as defined by regulations.

30.    Under the Patient Protection and Affordable Care Act (PPACA), Pub. L. 111-148, Mar. 23, 2010; Title VI, Subtitle E (Medicare, Medicaid and CHIP Program Integrity Provisions), Sect. 6402(d), providers must report and return to CMS, the State Medicaid program, or the carrier or contractor, any identified overpayments within the later of 60 days after the date on which the obligation was identified or the date the corresponding cost report is due, if applicable.    42 U.S.C. 1320a-7K(1)(d)(2).

31.    If the overpayment is retained and not reported by this deadline, the overpayment is

an "obligation" for purposes of the False Claims Act. *Id.* See also 42 C.F.R. § 401.305.

32.     A person has identified an overpayment when they have, or should have through

the exercise of reasonable diligence, determined that they received an overpayment and

quantified the amount of the overpayment. A person should have identified that they received an

overpayment and quantified the amount of the overpayment if the person fails to exercise

reasonable diligence and the person in fact received an overpayment. 42. C.F.R. § 401.305(a)(2).

### 1.     **Medicaid**

33.     Medicaid is a health care program for eligible low-income adults, children, pregnant

women, and/or disabled persons. As of October 2022, 91.3 million people were enrolled in

Medicaid, 4.8 million of whom were enrolled in Florida Medicaid.

https://www.medicaid.gov/medicaid/program-information/medicaid-and-chip-enrollment-
data/report-highlights/index.html

34.     In Florida, AHCA administers the Statewide Medicaid Managed Care ("SMMC")

program through private managed care plan companies that contract with AHCA and administer

a SMMC plan. As of February 13, 2023, ACHA had contracts with thirteen plan administrators

to provide SMMC plans. AHCA's SMMC programs are authorized by 42 C.F.R. 438, Fla. Stat.

Chapter 409, and Rule 59G, Florida Administrative Code.

35.     Each year, SMMC plans must file a quarterly and annual audited financial report

with AHCA showing revenue, expenses, and the MLR. The MLR is a calculation indicating the

portion of revenues spent on clinical services, quality improvement, and fraud detection. Federal

and Florida regulations require plans to report an MLR of at least 85% or greater, meaning that at

least 85% of a plan's revenues are spent on clinical services, quality improvement, and fraud

detection. 42 C.F.R. § 438.8; ACHA Contract FPXXX, Attachment II, Exhibit II A, Effective

02/01/19, Page 83/92, Section XII (F)(1); ACHA Statewide Medicaid Managed Care (SMMC)

Managed Care Plan Achieved Savings Rate Financial Report, effective 4/1/19.

## 2.     Capitated Rates and the Medical Loss Ratio

36.   Medicaid managed care plans receive payments from states based on a capitated

payment rate. A capitated payment rate is a payment rate (also called a "member month") set by

contract or regulations, paid to the managed care plan for each Medicaid member enrolled in the

plan during the defined payment period. Upon receipt of the capitated payment, the plan must

pay for a member's covered services, regardless of whether the costs of those services exceed the

capitated payment rate received from the state. Plans retain the flexibility to manage how they

spend their monies. See, e.g., 42 C.F.R. § 438.2; § 438.5.

37.   A state's capitated payment rate calculations take into account multiple factors,

including utilization reviews, providers' fee schedules, demographic data, and an allowance for

the health plan's administrative costs and profit margin. Id.

38.   The medical loss ratio is another factor used in setting the capitated payment rate. The

MLR protects Medicaid from paying for excessive health plan administrative expenses or profits

by ensuring that a sufficient percentage of the total capitated payment is spent on patient

services, quality improvement, and detecting fraud. Medicaid and CHIP Payment and Access

Commission (MACPAC), *Medical Loss Ratios in Medicaid Managed Care,* Issue Brief, January

2022.

39.   In 2016, CMS implemented detailed standards for Medicaid managed care,

including that managed care plans must begin calculating and reporting the MLR. CMS

mandated MLR reporting to ensure that the capitation rates sufficiently allow health plans to

spend at least 85% of total capitation revenue on covered services, and no more than 15% on other activities such as plan administration and profit.

40.   AHCA's managed care capitated payment rates are created by the AHCA Bureau of Medicaid Data Analytics and reported to, and approved by, CMS each fiscal year. CMS requires that capitated rates to be actuarially sound.

41.   AHCA's five-year contracts with SMMC plans require that, among other things, the contractors return any overpayments within forty calendar days of discovery; the capitated payments included in the contract must apply to the covered member-beneficiaries; the managed care plan must have a vigorous program to detect waste, fraud and abuse, including efforts to identify and recover overpayments; the managed care plan must submit quarterly and annual audited financial statements that include the MLR calculation; and the plans must have processes to ensure the validity and completeness of data, including reports, they submit to AHCA.

42.   As of July 2017 AHCA required SMMC plans to report an quarterly and annual (January 1 – December 31) MLR of at least 85%.

43.   AHCA provides a form workbook for SMMC plans to use in reporting their quarterly and annual audited financial statements. The workbook contains a worksheet describing AHCA's MLR calculation formula that specifies the underlying data components and data aggregation method.

44.   Florida calculates the MLR as the ratio of the numerator (the sum of

all plan benefit expenses, Florida-specific mandatory contributions to graduate medical

education institutions and payments to a state trust fund for supporting Medicaid and indigent

care, defined expenses for improving health care quality, and deductible fraud and abuse

detection and recovery expenses) to the denominator (calculated by taking the plan's adjusted

premium or total revenue earned on behalf of Medicaid patients and subtracting the sum of

federal taxes and assessments, state insurance and other premiums and taxes, and regulatory

licensing fees and taxes).

45.    Plans are required to submit quarterly and annual financial reports to AHCA that

must include a calculated MLR, the underlying data, and an attestation to the accuracy of the

MLR and that the plan's MLR reporting is in compliance with 42 C.F.R. 438.8 (k) and (n).

## V.    **FACTUAL ALLEGATIONS**

### A.    **Defendants Falsely Report Lower Capitated Payments, Artificially Inflating Their Medical Loss Ratio**

46.    Defendants have contracts with AHCA to provide SMMC plans to adults and

children. Sunshine entered a five-year contract with AHCA effective August 1, 2018. Staywell

entered a five-year contract with AHCA effective August 3, 2018.

47.    Relator provides and has provided medical care to patients who are Medicaid

members under Defendants' plans.

48.    Based on formulas contained in Defendants' contracts and amended contracts, and the

number of plan members and member months reported by each Defendant in their quarterly and

annual submissions, Florida pays monthly capitated rates to the Defendants for SMMC plan

services provided to adult and child members.

49.    Based on AHCA's capitated payments, and their legal and contractual obligations,

Defendants submit quarterly and annual financial statements that report, among other things, the plans' number of member months, amounts of capitated payments received from AHCA, other revenues and expenses, and MLR.

50.   For calendar year 2019, defendant Staywell submitted its quarterly and annual audited financial reports, e-signed by its CEO Elizabeth McPherson Miller. Its annual report for CY 2019, submitted on or about May 1, 2020, set forth the following:

     a. Total capitated payments received from AHCA:     $3,090,564,236.00

     b. Total revenue subject to MLR:     $3,206,549,357.00

     c. MLR:     94%

51.   However, defendant Staywell knowingly underreported its capitated payments, since AHCA paid defendant Staywell a larger capitated payment than Staywell reported. This larger capitated payment resulted in a larger amount of total revenue, and a correspondingly smaller MLR. Defendant Staywell's falsely reported capitated payments knowingly skewed its MLR calculation. Defendant Staywell's actual CY 2019 capitated payments and resulting MLR are as follows:

     a.   Actual total capitated payments received from AHCA:     $3,704,853,525.00

     b.   Total revenue subject to MLR:     $3,820,838,646.00

     c.   Actual MLR:     78.94%

The difference between the actual capitated payments and the reported capitated payments is $614,289,289.00

52.   Defendant Staywell retained within its own coffers the difference between the capitated payment amounts AHCA actually paid Staywell, and the capitated payment amounts Staywell reported having received from AHCA, which amounts to over $614 million.

53.   In its CY 2019 annual audited financial report submitted to AHCA, defendant Staywell did not report its retention of over $614 million in excess capitated payments or return this overpayment to the federal and/or state governments.

54.   Defendant Staywell's CY 2019 annual audited financial report falsely claimed that Staywell had met its legally mandated MLR percentage.

55.   Defendant Staywell made, used, or caused to be made or used, a false statement that knowingly underreported its MLR. Defendant Staywell knowingly failed to return its CY 2019 excess profits to AHCA and the Federal government. Defendant Staywell failed to return its overpayments within 40 days of identification, as required by contract, or within 60 days of identification, as required by the applicable regulations.

56.   For CY 2020 defendant Staywell submitted its quarterly and annual audited financial reports, e-signed by its CEO Elizabeth McPherson Miller. Its annual report, submitted on or about May 1, 2021, revealed as follows:

      a. Total capitated payments received from AHCA:      $3,362,866,340.00

      b. Total revenue subject to MLR:      $3,411,407,087.00

      c. MLR:      89%

57.   However, defendant Staywell knowingly underreported its capitated payments, because AHCA paid defendant Staywell a larger amount in capitated payment than Staywell reported. This larger capitated payment resulted in a larger total revenue, and consequently a smaller MLR. Defendant Staywell's falsely reported capitated payments skewed its MLR calculation. Defendant Staywell's 2020 actual capitated payments, and MLR, are as follows:

      a.   Actual total capitated payments received from AHCA:      $4,185,020,514.00

      b.   Total revenue subject to MLR:      $4,233,561,261.00

    c.  Actual MLR:                               72%

The difference between the actual capitated payments and reported capitated payments is $822,154,174.00

58.  Defendant Staywell retained within its own coffers the difference between the capitated payments amounts AHCA actually paid and the capitated payment amounts Staywell reported having received from AHCA, which amounts to over $822 million.

59.  In its CY 2020 quarterly and annual audited financial report submitted to AHCA, defendant Staywell did not report its retention of over $822 million in excess capitated payments or return this overpayment to the federal and/or state governments.

60.  Defendant Staywell's CY 2020 annual audited financial report falsely reported that Staywell had met its legally mandated MRL percentage.

61.  Defendant Staywell made, used, or caused to be made or used a false statement that knowingly misrepresented its MLR. Defendant Staywell knowingly failed to return its CY 2020 excess profits to the AHCA and the Federal government. Defendant Staywell failed to return its overpayments within 40 days of identification, as required by contract, or within 60 days of identification, as required by the applicable regulations.

62.  For calendar year 2020, defendant Sunshine submitted its annual report, e-signed by its CEO Elizabeth M. Miller. Sunshine's CY 2020 annual report set forth the following:

    a. Total capitated payments from AHCA:      $3,396,872,526.00

    b. Total revenue subject to MLR:           $3,408,304,360.00

    c. MLR:                              90%

63.  However, defendant Sunshine knowingly underreported its capitated payments.

AHCA paid defendant Sunshine a larger capitated payment than Sunshine reported. This larger capitated payment resulted in a larger total revenue, and consequently a smaller MLR. Defendant Sunshine's falsely reported FY 2020 capitated payments skewed its MLR calculation. Defendant Sunshine's 2020 actual capitated payments, and MLR, are as follows:

a. Actual total capitated payments from AHCA:      $3,623,220,224.00

b. Total revenue subject to MLR:      $3,634,652,058.00

c. Actual MLR:      84%

The difference between the actual capitated payments and reported capitated payments is $226,347,698.00

64.    Defendant Sunshine retained within its own coffers the difference between the capitated payment amounts AHCA actually paid Sunshine in CY 2020, and the capitated payments defendant Sunshine reported having received from AHCA, which amounts to over $226 million.

65.    In its CY 2020 annual audited financial report submitted to AHCA, defendant Sunshine did not report its retention of over $226 million in excess capitated payments.

66.    Defendant Sunshine's CY 2020 annual audited financial report falsely reported that Sunshine had met its legally mandated MLR percentage.

67.    Defendant Sunshine made, used, or caused to be made or used, a false statement that knowingly underreported its MLR. Defendant Sunshine knowingly failed to return its excess profits to AHCA and the Federal government. Defendant Sunshine failed to return its overpayments within 40 days of identification, as required by contract, or within 60 days of identification, as required by regulations.

68.    As a result of its false reporting, Defendants have retained excess capitated payments,

resulting in excess profits in an amount in excess of $950 million, in violation of their contractual obligations with AHCA and federal and state regulations.

## VI.   <u>COUNTS</u>

**COUNT I**
**FEDERAL FALSE CLAIMS ACT**
<u>**31 U.S.C. § 3729(a)(1)(G)**</u>

69.     Relator hereby incorporates and re-alleges each allegation in each of the preceding paragraphs as though fully set forth herein, and further alleges as follows:

70.     Defendants, by and through their agents, officers, employees, subsidiaries, and related companies, knowingly ma[de], use[d], and caused to be made and used, false records or statements to conceal, avoid, or decrease obligations to pay or transmit money or property to the Government.

71.     Defendants, by and through their agents, officers, employees, subsidiaries and related companies, knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

72.     In engaging in the conduct alleged above, Defendants acted "knowingly" as that term is defined in 31 U.S.C. § 3729, in that they acted with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information.

73.     The United States, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, or of the concealment used to avoid or decrease an obligation to pay or transmit money or property to the Government, paid and continues to pay claims that would not be paid but for Defendants' acts and conduct alleged herein.

74.     As a result of Defendants' violations of 31 U.S.C. § 3729(a)(1)(G), the United States

16

has suffered damages in an amount to be determined at trial.

## COUNT II
## FLORIDA FALSE CLAIMS ACT
## FLA. STAT. § 68.082(2)(g)

75.     Relator hereby incorporates and re-alleges each allegation in paragraphs 1 through 68 as though fully set forth herein, and further alleges as follows:

76.     By virtue of the acts described above, Defendants "[k]nowingly ma[de], use[d], or cause[d] to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state, or knowingly conceal[ed] or knowingly and improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or property to the state" for Medicaid services in violation of Fla. Stat. § 68.082(2)(g).

77.     In engaging in the conduct alleged above, Defendants acted "knowingly" as that term is defined in Fla. Stat.§ 68.082(1)(c), in that they acted with actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information.

78.     Defendants' false records and statements were material to Florida's Medicaid payments, in violation of Fl. Stat. § 6802(2).

79.     The State of Florida, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay claims that would not be paid but for Defendants' acts and conduct alleged herein.

80.     By reason of Defendants' acts, the State of Florida has been damaged, and continues

to be damaged, in a substantial amount to be determined at trial. Pursuant to Fla. Stat. § 68.082(2), the State of Florida is entitled to three times the amount of actual damages plus a penalty of $5,500 to $11,000 per violation.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of the United States and the State of Florida, demands that judgment be entered in her favor and against Defendants for the maximum amount of damages and such other relief as the Court may deem appropriate on each Count. With respect to the Federal FCA, this includes three times the amount of damages to the United States plus civil penalties for each false claim, and any other recoveries or relief provided for under law. This request also includes, with respect to the Florida False Claims Act, three times the amount of damages to the State of Florida plus civil penalties for each false claim and any other recoveries or relief provided for under law.

Further, Relator requests that she receive the maximum amount permitted by law of the proceeds of this action or settlement of this action collected by the United States and/or the State of Florida, plus reasonable expenses necessarily incurred, and reasonable attorneys' fees and costs. Relator requests that her award be based upon the total value recovered, both tangible and intangible, including any amounts received from individuals or entities who are not parties to this action.

## VIII.   JURY TRIAL DEMANDED

A jury trial is demanded in this case.

Respectfully submitted,


/s/ Diana L. Martin
Diana L. Martin
Florida Bar No. 624489
Cohen Milstein Sellers & Toll PLLC
11780 U.S. Highway One, Suite N 500
Palm Beach Gardens, FL 33408
(561) 515-1400
dmartin@cohenmilstein.com

Gary L. Azorsky *to be admitted pro hac vice*
Casey M. Preston *to be admitted pro hac vice*
Regina D. Poserina *to be admitted pro hac vice*
Cohen Milstein Sellers & Toll PLLC
100 N. 18th Street, Suite 3610
Philadelphia, PA 19103
(267) 479-5700
gazorsky@cohenmilstein.com
cpreston@cohenmilstein.com
rposerina@cohenmilstein.com

*Attorneys for Relator*
*Marcy L. Howard, M.D.*

June 28, 2023

## **CERTIFICATE OF SERVICE**

I certify that I caused to be served a true and correct copy of the Complaint, by certified U.S. Mail, Return Receipt Requested, upon the following:

The Honorable Merrick B. Garland
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

The Honorable Markenzy Lapointe
United States Attorney
U.S. Attorney's Office for the Southern
District of Florida
99 N.E. 4th Street
Miami, FL 33132

The Honorable Ashley Moody
Office of the Attorney General
The Capitol PL-01
Tallahassee, FL 32999-1050

The Honorable Jimmy Patronis
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL 32399

Date: June 28, 2023                    /s/ Diana L. Martin
                                       Diana L. Martin
                                       Florida Bar No. 624489
                                       Attorney for Relator
                                       Marcy L. Howard, M.D.

LEAH CUOMO
COHEN MILSTEIN SELLERS & TOLL
11780 US HIGHWAY ONE
SUITE 500
PALM BEACH GARDENS, FL 33408
UNITED STATES US

BILL SENDER

TO FL SOUTHERN DISTRICT CLERK OF COURT
UNITED STATES DISTRICT COURT
400 N. MIAMI AVE
ROOM 8N09
MIAMI FL 33128
(561) 803-3400          REF: 30420
INV:
PO:                          DEPT:



**FedEx** Express

THU - 29 JUN 10:30A
PRIORITY OVERNIGHT

TRK# 7725 8633 4210
0201

3C MPBA                    33128
          FL-US      MIA

Align bottom of **Peel and Stick Airbill** or **Pouch** here.